Indira J. Cameron-Banks (Cal. Bar No. 248634)
indira@cameronjones.law
Terrence M. Jones (Cal. Bar No. 256603)
indira@cameronjones.law
**CAMERON JONES LLP**
8383 Wilshire Boulevard, Suite 800
Beverly Hills, California 90211
Phone: (424) 757-0585

Attorneys for PLAINTIFF
*Stadium Creative Group, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| STADIUM CREATIVE GROUP, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. d/b/a WELLS FARGO, a Delaware corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-CV-00737<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Violation of the Electronic Funds Transfers Act, 15 U.S.C. § 1693 *et seq.*<br>2. Violation of the California Uniform Commercial Code §11201 *et seq.*<br>3. Trespass to Chattels<br>4. Conversion<br>5. Intentional Interference with Contract Relations<br>6. Negligent Interference with Prospective Economic Relations<br>7. Violation of the California Bus. & Prof. Code, § 17200 *Et Seq.*<br><br>**DEMAND FOR JURY TRIAL** |

# I.

# NATURE OF THE CASE

1. Plaintiff Stadium Creative Group, LLC ("Stadium Creative" or "Plaintiff") is a well-established and successful small business founded in 2015 located in Venice, California, and has been a loyal Wells Fargo Bank, N.A. ("Wells Fargo" or "Bank" or "Defendant") customer since its inception.

2. Stadium Creative's business is built on vendor relationships, and it routinely pays vendors from its Wells Fargo checking account. Stadium Creative had an established pattern of paying an overseas account belonging to a specific vendor, Universal Production Partners ("UPP") in the Czech Republic.

3. Stadium Creative received an email it reasonably believed to be from UPP directing electronic payment to be made to the vendor's new bank account, which happened to be a domestic bank account *also held at Wells Fargo*. The email was fraudulent, and so was the bank account, which was not held by the vendor but by a non-existent fictitious third party not associated with UPP.

4. Within weeks of Stadium Creative learning about the fraudulent nature of the payment made into another Wells Fargo account, the small business immediately notified Wells Fargo that the payment was both fraudulent and never authorized.

5. The fraudulent electronic fund transfer from Stadium Creative's legitimate Wells Fargo account to the fraudulent Wells Fargo account was sizeable -- $40,000 – and was a significant loss to the small business that still had to honor its payments to UPP, among other vendors.

6. Despite this knowledge about the fraudulent account, and its failure to take any precautionary measures whatsoever to prevent its creation or ensure that its own loyal customers were not defrauded by it, the Bank never returned Stadium Creative's stolen funds. Indeed, Wells Fargo knowingly allowed the

fraudulent account to be used for criminal conduct, including upon Stadium Creative, and the Bank itself profited from its creation and existence.

7. Stadium Creative made several attempts over several months to recover its fraudulently transferred funds from Wells Fargo, which merely stalled and rebuked Plaintiff's attempts to obtain information, even rebuffing Court-issued subpoenas for information about the fraudulent bank account. Indeed, as Stadium Creative tried to recover its stolen funds, Wells Fargo took steps to protect the stolen funds that it transferred into the fraudulent Wells Fargo account.

8. Stadium Creative brings this lawsuit in order to redress the substantial harm it endured as a direct and proximate result of Wells Fargo's egregious and illegal conduct.

## II.

## JURISDICTION & VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under 15 U.S.C. § 1693 and 28 U.S.C. § 1367.

10. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. As set forth below, Plaintiff is diverse from all Defendants in this litigation and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

11. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within this judicial district, namely, within Los Angeles County.

12. The Court has personal jurisdiction over Wells Fargo in that the Bank is licensed to do business and, in fact, does do substantial business within the State of California and within the Central District of California.

13. Venue in the Central District of California is proper as Plaintiff is a California entity that maintains operates in Los Angeles County, and the conduct complained of herein occurred within the judicial district where Defendants conduct business.

## III.

## PARTIES & RELEVANT NON-PARTIES

14. Plaintiff Stadium Creative Group, LLC is a California limited liability company having its principal place of business situated within Los Angeles County.

15. Defendant Wells Fargo Bank, N.A. d/b/a Wells Fargo is a federally insured financial institution organized under the laws of the State of Delaware with its principal place of business in South Dakota that does substantial consumer banking business as "Wells Fargo" in Los Angeles County.

16. Plaintiff is ignorant of the true names and capacities of the defendants sued as DOES 1 through 10, inclusive (the "DOE Defendants") and, therefore, sues these DOE Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

17. Plaintiff is informed and believes, and on that basis alleges, that the DOE Defendants acted wrongfully, maliciously, intentionally and negligently; that each is responsible in some manner for the events and happenings complained of herein; and that Plaintiff's injuries, as alleged herein, were proximately caused by the DOE Defendants, either through each Defendant's own conduct or through the conduct of their agents and/or employees.

18. Plaintiff is informed and believe, and on that basis alleges, that at all times material to the allegations of this Complaint, each of the Defendants, whether named or fictitiously named as a DOE Defendant, were the merging entity, merged entity, subsidiary, acquiring corporation, agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting

within the course and scope of such agency and/or employment with knowledge, advice, permission and consent of each other.

19. As used herein, the term "Defendants" means all Defendants, both jointly and severally, and references by name to any one Defendant shall include and reference all Defendants, both individual, corporate and business entities, both specifically named and unnamed, and both jointly and severally to all.

20. Plaintiff is further informed and believe, and on that basis allege, that at all times material to the allegations of this Complaint, Defendants caused, aided, abetted, facilitated, encouraged, authorized, permitted and/or ratified the wrongful acts and omissions described in this Complaint.

## IV.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

21. Stadium Creative is a production company that directly services clients, and advertising agencies and relies heavily on the use of freelancers and independent contractors that are paid from their bank accounts at Wells Fargo.

22. For more than seven years preceding the events giving rise to this Complaint, Stadium Creative maintained both a savings and checking with the Bank to conduct its business.

23. Stadium Creative enrolled as a customer at the Wells Fargo branch on Washington Blvd., in Marina Del Rey, California, but conducted most of its banking online.

24. Stadium Creative went through an extensive vetting process by Wells Fargo in order to become a Bank customer and open a business account with them. Stadium Creative reasonably expected that any other person or entity would also have to undergo similar scrutiny, and that Wells Fargo used an extensive vetting process to protect Stadium Creative and other customers from fraudulent accounts being opened at the Bank.

25. Wells Fargo, like other financial institutions, is required by federal

laws and regulations to implement policies and procedures to know the true identities of their customers, and to perform sufficient customer due diligence to create an accurate and appropriate risk-based profile associated with accounts opened and maintained at the Bank. As such, Wells Fargo is legally required to do diligence to evaluate an account and/or customer's risk for conducting illegal financial transactions through, or with, their bank accounts.

26. Stadium Creative routinely works with vendors out of Europe and one such vendor, Universal Production Partners (UPP) was a well-established vendor based in the Czech Republic. Stadium Creative routinely made payments to UPP as a project developed into an overseas account, and in February 2022, Plaintiff owed a payment of $40,000 to UPP.

27. Stadium Creative's accountant had access to its Wells Fargo bank account in order to make payments to vendors, including UPP. The accountant received an email that she reasonably believed to be from UPP, with an invoice, that requested that the $40,000 payment be made into UPP's new domestic account in the United States at Wells Fargo. In reasonable response to the email, the accountant requested that Wells Fargo make a payment to UPP in the amount of $40,000 by an electronic funds transfer from Stadium Creative's Wells Fargo account. However, unbeknownst to Stadium Creative or its accountant, the numbers ascribed to the Wells Fargo bank account identified in the email did actually not belong to UPP, but to some third-party unknown to Stadium Creative or UPP.

28. While Plaintiff requested an electronic funds transfer be made from its account to UPP, Wells Fargo instead caused, initiated, and executed an electronic funds transfer to be made between two Wells Fargo accounts -- from Stadium Creative's legitimate bank account to another Wells Fargo account that was not held by UPP, in no way associated with UPP, and, based on information and belief, was assigned to a fictitious party that does not actually exist.

29. Because of its federal legal and regulatory obligations, Wells Fargo had all the information to know that the account into which it caused, initiated and executed an electronic transfer of funds from Stadium Creative's account was fraudulent and/or fictitious because it did not belong to UPP and/or it was not held in the name of an actual entity or person associated with UPP.

30. Based on information and belief, the Wells Fargo account into which Stadium Creative's funds were transferred was held in a fictitious name, and the laws requiring Wells Fargo to know the true identity of its customers, and conduct diligence on such customers, resulted in the bank having actual knowledge that the account was high-risk and being used for criminal activity. With this knowledge Wells Fargo still caused Stadium Creative's funds to be transferred into it on February 4, 2022.

31. Not having received any payment owed to it, UPP inquired about the status of payment from Stadium Creative's accountant, who was confused because she had already directed the payment to have been made to UPP. As she investigated what happened to the payment, the accountant and others at Stadium Creative discovered that Plaintiff had been subject to a business email compromise scheme, in which an email that appeared to be from UPP, was in fact, from an email account fraudulently representing itself to be from UPP.

32. Promptly upon making this shocking discovery, Stadium Creative notified Wells Fargo that the electronic fund transfer that it caused to be made from its own Wells Fargo account to *another* Wells Fargo account was indeed fraudulent, never authorized, and asked for repayment of the fraudulent funds.

33. Wells Fargo had legal obligations to protect its longstanding client and customer, Stadium Creative, from fraudulent criminal activity being conducted through other Wells Fargo bank accounts. However, Wells Fargo has consistently denied, dismissed and disregarded these obligations.

34. Stadium Creative's partners called Wells Fargo's "1-800" number,

and eventually received a "case number" about their request for repayment. Wells Fargo forced Plaintiff to engage in several phone calls with different Wells Fargo employees including but not limited to David Garcia, Derrick Morgan, and Michael Jones. Based on information and belief, these phone calls were simply part of Wells Fargo's tactics to delay and deflect Plaintiff's attempts to recover the funds stolen from their bank account and deposited into another Wells Fargo bank account.

35. Wells Fargo never recalled or returned the electronically transferred funds it caused, initiated, and executed to be drawn from Stadium Creative's account into the other Wells Fargo bank account that was not held by UPP and/or held in the name of a fictitious person or entity.

36. Wells Fargo never initiated any full or provisional credit to Plaintiff in the amount of $40,000, and never repaid the funds that Wells Fargo caused to be transferred from Stadium Creative's bank accounts into the other Wells Fargo's bank account that was fraudulent and being used for criminal activity and illegal financial transactions.

37. Left with little recourse to recover its funds, Plaintiff filed a civil lawsuit in Los Angeles Superior Court, incurring significant expense and expending a great deal of resources to try recover funds from the seemingly fictitious individual and/or entity named as the holder of the fraudulent Wells Fargo accounts. As part of that suit, Plaintiff personally served Wells Fargo on no less than four separate occasions with valid subpoenas for information about the fraudulent Wells Fargo account being used for criminal activity and illegal financial transactions. Wells Fargo repeatedly ignored and refused to respond to any of the judicial subpoenas. Without the critical information being sought by Plaintiff through the subpoenas, the Los Angeles Superior Court case was dismissed without prejudice.

38. Stadium Creative is a small business and incurred extreme financial

hardship to stay afloat, and diminished reputation amongst its vendors, as a result of Wells Fargo's actions.

39. In order to preserve its business and its reputation, Stadium Creative was forced to pay UPP the $40,000 payment on top of the $40,000 it lost when Wells Fargo transferred, and subsequently refused to refund, credit or repay Plaintiff that amount. Stadium Creative was unable to meet its routine payroll and other operating expenses along with federal and state tax payments that were due, and as a result was forced to take out excessive lines of credit upon which significant fees, charges, and interest has been incurred by Stadium Creative.

## V.
## CAUSES OF ACTION CLAIMED BY THE PLAINTIFF

### First Cause Of Action
### VIOLATION OF THE ELECTRONIC FUNDS TRANSFERS ACT, 15 U.S.C. § 1693 *et seq.*

40. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

41. The Electronic Funds Transfers Act, 15 U.S.C. § 1693 *et seq.* ("EFTA") provides for individual consumer rights in the electronic fund and remittance transfer system, including when an "unauthorized electronic fund transfer" occurs, which is when, like here, an electronic fund transfer is initiated by someone without authority to initiate such a transfer, which does not benefit the account holder.

42. The EFTA provides that a customer like Plaintiff that timely reports an unauthorized electronic fund transfer bears no liability for such transfer.

43. The EFTA provides that a financial institution shall be liable to a customer who timely reports an unauthorized fund transfer in the amount of *treble* damages for failing (a) to provide a credit to their account, (b) conduct a good faith investigation, and/or (c) unreasonably concluding that there was no error.

44. Each and every time there was an unauthorized electronic fund transfer on any of its accounts, including the $40,000 transfer into another Wells Fargo account, Plaintiff promptly informed Wells Fargo.

45. Wells Fargo specifically failed to follow Plaintiff's express instructions to make a payment to UPP, a longstanding vendor that commonly received payments from Plaintiff from its Wells Fargo Account.

46. Wells Fargo instead initiated the fraudulent transfer of funds into another Wells Fargo account that was not held by UPP or any party associated by UPP, but in the name of a likely fictitious party that did not exist and was being used to conduct criminal activity.

47. After the unauthorized electronic fund transfer occurred, Wells Fargo failed to conduct any reasonable investigation into the unauthorized fund transfer or provide Plaintiff with any explanation of any investigation.

48. After the unauthorized electronic fund transfer occurred, Wells Fargo failed to provide Plaintiff with any credit, provisional or otherwise, to its affected accounts.

49. After the unauthorized electronic fund transfer occurred, Wells Fargo failed to refund Plaintiff the loss incurred because of the unauthorized $40,000 electronic fund transfer into the fraudulent Wells Fargo account from Plaintiff's legitimate Wells Fargo bank account.

50. Wells Fargo's acts and omissions constitute multiple violations of the EFTA.

51. As a result of each and every violation of EFTA, Plaintiff incurred economic and non-economic harm and damages and is therefore is entitled to any actual damages, statutory damages, treble damages, and, attorneys' fees and costs. *See* 15 U.S.C. §§ 1693f and 1693m.

**Second Cause Of Action**
**VIOLATION OF CALIFORNIA UNIFORM COMMERCIAL CODE, § 11101** *et seq.*

52. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

53. The Cal. U. Com Code §11101 *et seq.* related to fund transfers expects financial institutions like Wells Fargo to institute security procedures to protect unauthorized fund transfers like the one that happened to Plaintiff. The security procedures must be commercially reasonable based on, among other things, the express wishes of the customer and that customer's known circumstances.

54. When a customer like Plaintiff provides timely notification of the unauthorized transfer of funds from its account that was not subject to commercially reasonable security procedures, the Cal. U Com Code §11101 *et seq.* instructs the bank to refund the unauthorized amount back to the customer, with interest.

55. When a bank like Wells Fargo fails to employ reasonable security measures, including those that are legally required by federal laws, to protect a customer's account like the Plaintiff's account, the bank is liable to the customer for unauthorized fund transfers and/or payment orders, like the one that occurred from Plaintiff's account in the amount of $40,000.00, plus interest.

56. Wells Fargo's conduct as set forth herein violated the California U. Com Code § 11101 *et seq.*

57. As a result of Wells Fargo's acts and omissions, Plaintiff incurred economic and non-economic harm and damages, and is therefore is entitled to any actual damages, compensatory damages, and interest as allowed by law.

**Third Cause of Action**
**TRESPASS TO CHATTELS**

58. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

59. Plaintiff had an ownership interest and a right to possession of its property in its bank accounts at Wells Fargo, and monies contained therein, at the time Wells Fargo unlawfully took possession of it and transferred it into another Wells Fargo account which Wells Fargo knew was not legally entitled to possession of such property.

60. Wells Fargo intentionally and substantially interfered with Plaintiff's property by taking possession of it and placing it into another Wells Fargo account being used to conduct criminal and fraudulent financial transactions.

61. Wells Fargo refused to provide Plaintiff access its funds that the Bank held in another Wells Fargo account being used to conduct criminal and fraudulent financial transactions after Plaintiff demanded access to its own property or funds.

62. Plaintiff never consented to Wells Fargo's egregious conduct of depriving it of access to its own funds that the Bank transferred out of its Wells Fargo accounts and held in another Wells Fargo account being used to conduct criminal and fraudulent financial transactions.

63. Wells Fargo wrongfully deprived Plaintiff of access to its own funds that the Bank transferred and held in another Wells Fargo account being used to conduct criminal and fraudulent financial transactions, and stripped Plaintiff of the ability to access funds necessary for its operations.

64. As a direct and proximate result of Wells Fargo's egregious conduct, Plaintiff experienced extreme financial hardship and incurred significant expenses, and is entitled to any compensatory damages, including economic and non-economic damages, and punitive damages.

### Fourth Cause of Action
### CONVERSION

65. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

66. Plaintiff had an ownership interest and a right to possession of its property in its bank accounts at Wells Fargo, and monies contained therein, at the time Wells Fargo unlawfully took possession of it and transferred it into another Wells Fargo account which Wells Fargo knew was not legally entitled to possession of such property.

67. Wells Fargo intentionally and substantially interfered with Plaintiff's property by taking possession of it and placing it into another Wells Fargo account being used to conduct criminal and fraudulent financial transactions.

68. Wells Fargo refused to provide Plaintiff access its funds that the Bank held in another Wells Fargo account being used to conduct criminal and fraudulent financial transactions after Plaintiff demanded access to its own property or funds.

69. Plaintiff never consented to Wells Fargo's egregious conduct of depriving it access to its own funds that the Bank transferred and held in another Wells Fargo account being used to conduct criminal and fraudulent financial transactions.

70. Wells Fargo wrongfully deprived Plaintiff of access to its own funds that the Bank transferred and held in another Wells Fargo account being used to conduct criminal and fraudulent financial transactions, and stripped Plaintiff of the ability to access funds necessary for its business operations.

71. As a direct and proximate result of Wells Fargo's egregious conduct, Plaintiff experienced extreme financial hardship and incurred significant expenses, and is entitled to any compensatory damages, including economic and non-economic damages, and punitive damages.

### Fifth Cause of Action
**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

72. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

73. As a long-standing customer of Wells Fargo, the Bank knew the nature of Plaintiff's business and how heavily it relied on vendor relationships and employees to succeed, and was well aware of its payment practices.

74. Wells Fargo knew Plaintiff entered into contractual obligations in order to conduct its business including, without limitation, contractual relations with vendors and employees.

75. Wells Fargo's outrageous conduct, including but not limited to, transferring $40,000 from Plaintiff's bank account into another Wells Fargo account that it knew or should have known was being used to conduct criminal and fraudulent financial transactions, and the subsequent refusal to repay or credit Plaintiff's Wells Fargo accounts for the unlawful transfer, caused Plaintiff extreme financial hardship and difficulty in trying to meet its business obligations under various contracts necessary and essential to its business.

76. Wells Fargo knew that its outrageous conduct was likely to disrupt Plaintiff's ability to perform its contractual obligations.

77. As a direct and proximate result of Wells Fargo's egregious conduct, Plaintiff experienced extreme financial hardship and incurred significant expenses, and is entitled to any compensatory damages, including economic and non-economic damages, and punitive damages.

### Sixth Cause of Action
### NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

78. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

79. As a long-standing customer of Wells Fargo, the Bank knew the nature of Plaintiff's business and how heavily it relied on vendor relationships, including with UPP, and benefited from a continued relationship with such vendors.

80. The Bank knew or should have known that if a significant amount of funds – such as $40,000 – was stolen from Plaintiff's bank accounts it would disrupt Plaintiff's vendor relationships, including the one with UPP. As such, the Bank knew or should have known that by failing to act with reasonable care to protect Plaintiff's accounts held at Wells Fargo, Plaintiff's vendor relationships would be significantly impacted.

81. Regardless of this knowledge, Wells Fargo failed to act with reasonable care to protect Plaintiff's bank accounts, including but not limited to, failing to follow Plaintiff's instructions to transfer its funds specifically to UPP, and failure to prevent criminal and fraudulent conduct against Plaintiff through the use of other Wells Fargo accounts.

82. Wells Fargo's outrageous conduct, including but not limited to, transferring $40,000 from Plaintiff's bank account into another Wells Fargo account that it knew or should have known was being used to conduct criminal and fraudulent financial transactions, directly and proximately damaged and disrupted Plaintiff's reputation and relationship with its vendors, including with UPP, and impaired its ability to easily secure vendor relationships that were necessary to the success of its business.

83. As a direct and proximate result of Wells Fargo's egregious conduct, Plaintiff experienced extreme financial hardship and incurred significant expenses, and is entitled to any compensatory damages, including economic and non-economic damages, and punitive damages.

### Seventh Cause of Action
**VIOLATION OF THE CALIFORNIA BUS. & PROF. CODE, § 17200 *et seq.***

84. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully re-stated herein.

85. Wells Fargo's conduct as alleged in this complaint, including each cause of action, constitutes unlawful, unfair and fraudulent business acts and practices in violation of the Cal. Bus. & Prof Code § 17200 *et seq.*

86. As a result of Wells Fargo's unlawful, unfair and fraudulent business acts and practices in violation of the Cal. Bus. & Prof Code § 17200 *et seq*, Plaintiff incurred economic and non-economic harm and damages and are entitled to restitution and any other appropriate relief as authorized by Cal Bus. & Prof. Code § 17200 *et seq*.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendants for the following as allowed by relevant statutory and common law:

a. Statutory damages up to the maximum amount available under applicable law, including without limitation, 15 U.S.C. § 1693m;

b. Treble damages as available under applicable law, including without limitation, 15 U.S.C. § 1693f;

c. Punitive damages according to proof at trial;

d. Economic damages and non-economic damages according to proof at trial;

e. Costs of litigation as available under applicable law, including without limitation, 15 U.S.C. § 1693m;

f. Plaintiff's attorneys' fees as available under applicable law, including without limitation, 15 U.S.C. § 1693m;

g. Declaratory relief as available under applicable law;

h. Injunctive relief as available under applicable law;

///

///

i. Restitution;

j. Prejudgment interest at the legal rate; and

k. For any further such relief as the Court may deem appropriate.

Dated: January 31, 2023

CAMERON JONES LLP

by: _____
Indira J. Cameron-Banks
Terrence M. Jones

ATTORNEYS FOR PLAINTIFF
*Stadium Creative Group, LLC*